IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| **TIMOTHY COLEMAN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 21-cv-2200 |
| | ) | |
| **AMAZON.COM, INCORPORATED, et al.,** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**ORDER DENYING MOTION FOR APPROVAL OF SETTLEMENT**

This is a case under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219. Before the Court is Plaintiff Timothy Coleman's October 7, 2022 Motion for Approval of Collective Action Settlement. (ECF No. 56.) On December 22, 2022, Plaintiff submitted supplemental briefing to support his request for an award of attorney's fees. (ECF No. 66.) Defendants do not oppose either the Motion for Approval or Plaintiff's separate fee request. (ECF No. 56 at 18.) The Court, however, cannot approve the settlement. For the following reasons, the Motion, ECF No. 56, is DENIED.

**I.   Background**

On April 1, 2021, Plaintiff Timothy Coleman filed a complaint against Defendants Amazon.com, Inc., Amazon Logistics,

Inc., Amazon.com Services, Inc. (collectively, "Amazon"), and JARS TD, Inc. ("JARS"). (ECF No. 1.) The original complaint alleged that Plaintiff worked as a delivery driver for JARS, which provided "last mile" delivery services in the Memphis, Tennessee area for Amazon's packages. (Id. at 5-6.) According to the complaint, Plaintiff regularly worked more than forty hours a week and was entitled to overtime pay under the FLSA, but was paid only a daily rate that did not comply with the requirements of the FLSA. (Id. at 8-9.) On August 19, 2021, Plaintiff amended his complaint. (ECF No. 33.) The amended complaint was brought as an FLSA collective action and added allegations that Defendants impermissibly encouraged employees to work off-the-clock. (Id. at 9, 18-19.) Six additional plaintiffs have opted-in to the collective action. ECF Nos. 34, 37, 43; see 29 U.S.C. § 216(b).

After "extensive investigation, arm's length settlement negotiations, and multiple in-person settlement conferences," the parties agreed to settle. (ECF No. 56 at PageID 292.) They have submitted a proposed settlement agreement, which the Court has reviewed. (Id. at PageID 316.)

The settlement agreement provides $560,000 to settle the drivers' claims. (Id. at PageID 320.) Under the agreement, notice and a settlement check will be mailed to all individuals who delivered packages for JARS from October 29, 2018 to April 30,

2022. (Id. at PageID 320, 323.) Any putative collective action member who signs and deposits the check will be deemed to have opted-in to the collective action. (Id. at PageID 321.) The parties agree that the following language will be placed on the back of each check:

> By depositing or cashing this check, I am opting into and affirm my release of Amazon.com, Inc.[;] Amazon.com Services, Inc.; Amazon Logistics, Inc.; and JARS TD, Inc., and all other Released Parties of my Released Claims as defined in the Settlement Agreement approved by the Court in *Coleman v. Amazon.com, Inc., et al.*, 2:21-cv-02200-MSN-atc. I affirm that I will not sue or assert any of the Released Claims, including FLSA claims, against any of the Released Parties.

(Id. at PageID 324.) After the period in which potential collective members can deposit their checks ends, Plaintiff's counsel will file with the Court a list of individuals who accepted their checks. (Id. at PageID 329.) Individuals who do not deposit their checks will not be bound by the settlement, and the surplus funds will be returned to Defendants. (Id. at PageID 325-26.)

The agreement provides that each potential collective action member will be paid a minimum of $50. (Id. at PageID 327.) According to JARS' records, there are 3202 potential collective members, meaning that $160,100 will be paid out to satisfy the $50 minimum. (Id. at PageID 320.) The 1409 individuals who worked more than thirty-five hours per week for more than two weeks will receive a portion of the remaining $399,900. (Id. at PageID

3

320, 327-28.) This $399,900 will be distributed pro rata based on the number of weeks in which each driver worked more than thirty-five hours. (Id. at PageID 327-28.) That amounts to a recovery of $50 for those who worked two or fewer workweeks of more than thirty-five hours and an average of $333.82 for those who worked more than two such workweeks.[1]

In exchange for these payments, collective members release all wage-and-hour type claims under the FLSA and state and local law for the period they worked for JARS. (Id. at PageID 319, 321.) Plaintiff Coleman will receive an additional $10,000 payment for his general release of all claims against Defendants, whether under wage-and-hour or other law. (Id. at PageID 321-22.)

The agreement provides for up to $400,000 in attorney's fees and up to $30,000 in costs. (Id. at PageID 319.) The latter figure includes up to $20,000 in settlement administration costs. (Id. at PageID 320.)

The parties ask the Court to approve the agreement.[2] (Id. at PageID 292.)

---

[1] This figure is computed by dividing the $399,900 figure by the 1409 drivers who will share it and then adding the $50 minimum. Counsel provide a slightly different estimate of "$337.50 in addition to the guaranteed $50 minimum payment," which totals $387.50. (ECF No. 66 at PageID 395.)

[2] The parties briefly note their position that court approval of FLSA collective action settlements is not required. (ECF No. 56 at PageID 292 n.1.) The weight of authority in this circuit is to the contrary. Chime v. Fam. Life Counseling & Psychiatric Servs., No. 1:19cv2513, 2020 U.S. Dist. LEXIS 214765, at *9 (N.D. Ohio Nov. 17, 2020)

**II.   Standard of Review**

A court will approve an FLSA collective action settlement only after finding that "(1) the opt-in plaintiffs are similarly situated, (2) the opt-in plaintiffs have properly filed written consents with the court, and (3) the settlement is a fair and reasonable resolution of a bona fide dispute." Jones v. H&J Rests., LLC, No. 5:19-CV-105, 2020 U.S. Dist. LEXIS 219071, at *17 (W.D. Ky. Nov. 20, 2020).

**III. Analysis**

There are multiple issues with the settlement agreement that preclude its approval.

**A. Depositing a Check Is Not a Valid Form of Opting-in.**

The settlement provides that putative collective action members who deposit their checks opt-in to the litigation and release their claims. (ECF No. 56 at PageID 321.) Those procedures are not adequate because they do not constitute a proper written consent filed with the Court.

The requirement of written consent comes directly from the statutory text; "[n]o employee shall be a party plaintiff to any [FLSA collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). "Although the

---

("District courts within this [c]ircuit routinely require court approval of FLSA settlements.").

5

FLSA does not specify the form that this written consent must take, multiple courts have found that cashing a check cannot satisfy § 216(b)'s opt-in mandate." O'Bryant v. ABC Phones of N.C., Inc., No. 2:19-cv-02378, 2020 U.S. Dist. LEXIS 138599, at *27 (W.D. Tenn. Aug. 4, 2020) (internal citation omitted) (collecting cases). Courts have recently and repeatedly refused to endorse settlements that premised the release of FLSA claims merely on the deposit of a check. Id. at *30; Stephens v. ADS All. Data Sys., Inc., No. 2:20-cv-2152, 2022 U.S. Dist. LEXIS 173031, at *5 (S.D. Ohio Sept. 23, 2022) (rejecting settlement because "class members do not need to take any affirmative action besides cashing a check to release their FLSA claims"); Douglas v. Allied Universal Sec. Servs. LLC, 371 F. Supp. 3d 78, 85 (E.D.N.Y. 2019) ("[The] FLSA does not allow the cashing of a settlement check to serve as an employee's consent to become a collective member."); Smothers v. Northstar Alarm Servs., Inc., No. 2:17-cv-00548, 2019 U.S. Dist. LEXIS 10220, at *32 (E.D. Cal. Jan. 22, 2019); Anderson v. Safe Streets USA, LLC, No. 2:18-cv-00323, 2022 U.S. Dist. LEXIS 229149, at *20-21 (E.D. Cal. Dec. 20, 2022); Beltran v. Olam Spices & Vegetables, Inc., No. 1:18-cv-01676, 2021 U.S. Dist. LEXIS 55013, at *11-12 (E.D. Cal. Mar. 23, 2021) (stating, in order setting hearing, that opt-in procedures relying on cashing of a check to release FLSA claims would likely be found insufficient).

Although the settlement provides for Plaintiff's counsel to file a list of those who ultimately deposited their checks, ECF No. 56 at PageID 329, that is not an adequate substitute for the filing with the Court of written consent from each opt-in plaintiff. This Court has rejected a proposed FLSA settlement in circumstances nearly identical to those found here. O'Bryant, 2020 U.S. Dist. LEXIS 138599, at *27-30. In that case, the Court noted that, even if the parties filed a list of individuals who deposited their checks, "that method would be deficient, because it would not comply with the plain language of § 216(b): it would not be the written consent of each individual Opt-In Plaintiff filed with the Court." Id. at *30; see also Smothers, 2019 U.S. Dist. LEXIS 10220, at *31-32 (similar).[3] The settlement agreement's opt-in procedures do not comply with the FLSA's requirements, and the settlement cannot be approved until that defect is remedied.

**B. The Parties Ask the Court to Dismiss the Case Before All Parties Have Joined.**

The proposed timing of the Court's dismissal of the case is a second potential deficiency in the settlement agreement. The parties appear to ask that the Court dismiss the case with prejudice immediately after approving the settlement. (ECF No.

---

[3] The parties' renegotiated settlement in O'Bryant was eventually approved. O'Bryant v. ABC Phones of N.C., Inc., No. 19-cv-02378, 2020 U.S. Dist. LEXIS 240965, at *1-2 (W.D. Tenn. Dec. 22, 2020).

7

56 at PageID 304 (requesting the Court "approve the settlement . . . and enter an Order of dismissal with prejudice"); see also id. at PageID 314.)

To the extent that the parties request an immediate dismissal after approval, that request is not well taken. A dismissal after settlement typically ends a court's jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 380 (1994). Although courts can retain jurisdiction to enforce the terms of a settlement agreement, id., granting an immediate dismissal here would require more than mere enforcement of a standard settlement agreement. If the Court approved the settlement and dismissed the case at the same time, it would effectively be allowing any opt-in plaintiffs to opt into a litigation that has already been dismissed. After dismissal, the Court would not simply be retaining jurisdiction over the parties to a settlement, but would effectively be asserting jurisdiction over new parties and their claims. See O'Bryant, 2020 U.S. Dist. LEXIS 138599, at *33-34. Such post-dismissal opt-ins are not permissible. Id.; Xiao Ling Chen v. Xpresspa at Terminal 4 JFK LLC, No. 15 CV 1347 (CLP), 2018 U.S. Dist. LEXIS 169758, at *17 (E.D.N.Y. Mar. 30, 2018) ("If the Court dismisses the case, then recipients of the settlement checks would have no litigation to opt in to."); Leigh v. Bottling Grp., LLC, No. DKC 10-0218, 2011 U.S. Dist. LEXIS 33147, at *5 (D. Md. Mar. 29, 2011) ("[I]f the

named plaintiffs settle their claims, the action may be rendered moot."); Faubel v. Grogg's Heating & Air Conditioning, Inc., No. 2:17-cv-02410, 2018 U.S. Dist. LEXIS 86766, at *4-5 (S.D. W. Va. May 22, 2018) (referring to a "general consensus that an FLSA action becomes moot once the named plaintiffs settle their claims").

The case should not be dismissed before all parties have opted-in. Therefore, Plaintiff's counsel should ensure that all parties to any new settlement are properly before the Court before the Court is asked for final approval and an order of dismissal.

**C. There Is Insufficient Information to Evaluate Plaintiff Coleman's Additional $10,000 Payment.**

The settlement agreement's provision of a $10,000 payment to Plaintiff Coleman poses an additional potential problem. It is not immediately clear whether the payment to Coleman is an incentive award for Coleman's services to the collective, a payment for Coleman's release of claims above and beyond those released by other members of the collective, or some combination. The settlement agreement describes the $10,000 payment as consideration for Coleman's release of "any and all actual or potential actions . . . which Plaintiff Coleman ever had, now has or hereafter may have" concerning Coleman's work for Defendants. (ECF No. 56 at PageID 321.) The parties do not state,

9

however, what additional claims Coleman might have beyond the wage-and-hour claims released by all collective members. The Motion for Approval describes the $10,000 payment as a "service award," but one made "in exchange for signing a general release in favor of Defendants." (Id. at PageID 293.)

Whether the payment is consideration for a release of claims or an incentive award for services rendered to the collective is important because the Sixth Circuit has instructed district courts to scrutinize service awards closely. See Hadix v. Johnson, 322 F.3d 895, 897 (6th Cir. 2003). Courts may "sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." Id.; see also Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.), 724 F.3d 714, 722 (6th Cir. 2013) ("[T]o the extent that incentive awards are common, they are like dandelions on an unmowed lawn -- present more by inattention than by design."). Incentive payments should be subject to particularly close scrutiny when the amount of the award significantly exceeds the relief provided to the collective or class, as appears to be the case here.[4] See Greenberg, 724 F.3d at 722 ("[W]e should be most dubious of incentive payments

---

[4] The $10,000 payment to Coleman exceeds the recovery of typical collective members, who (excluding those individuals receiving the $50 minimum payment) will receive on average somewhat more than $300. (ECF No. 66 at PageID 395.)

10

when they make the class representatives . . . more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief.").

As the record stands, the Court cannot evaluate the reasonableness of the $10,000 payment to Coleman. Therefore, in any subsequent motion for approval of a collective action settlement, the parties should include the basis for an incentive award to Coleman, including the approximate number of hours Coleman has contributed to aiding the collective's claims, the nature of Coleman's assistance, and counsel's evaluation of the value of Coleman's efforts to the collective. To the extent the parties contend that part or all of the $10,000 payment is not an incentive award, but consideration for Coleman's general release of Defendants from non-wage-and-hour claims, they should supply a reasonable basis to believe that Coleman has claims to release other than the wage-and-hour claims released by all collective members.[5]

---

[5] Courts generally do not review the reasonableness of settlements outside specific contexts, such as class actions or FLSA collective actions. Greenberg, 724 F.3d at 715. Although the Court has no reason to evaluate whether $10,000 is a fair trade for Coleman's release of his non-wage-and-hour claims, the Court must assure itself that there is some claim or potential claim Coleman is actually releasing beyond those released by the collective generally. If the Court failed to do so in all FLSA settlements, parties would be able to disguise incentive awards as payments for the release of non-existent claims, thus evading the scrutiny of incentive awards required by the Sixth Circuit.

11

**D. The Court Currently Has Insufficient Information to Grant or Deny Plaintiffs' Counsel's Fee Request.**

At the December 5, 2022 approval hearing, the Court directed Plaintiffs' counsel to provide supplemental briefing about counsel's hours worked and hourly rates. (ECF No. 60.) Counsel did so and reported a lodestar value, not accounting for costs, of $166,520. (Id. at PageID 386.) Given counsel's fee request of $400,000, this yields a lodestar multiplier of 2.4.[6]

The Court is currently unable to assess the reasonableness of the fee request. "'[T]he most critical factor' governing the reasonableness of a fee award 'is the degree of success obtained.'" Waldo v. Consumers Energy Co., 726 F.3d 802, 822 (6th Cir. 2013) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)). Given the denial of the Motion for Approval, it is not clear how many individuals will be included in any subsequent resolution or what their recovery will be. The Court will therefore reserve judgment on counsel's fee request until it is able to assess the results achieved for all plaintiffs.

---

[6] Plaintiff's supplemental briefing represents that a paralegal worked on the case and argues that her hourly rate is reasonable. (ECF No. 66 at PageID 388, 391.) Although it does not seem to be the case, the briefing could be interpreted to mean that paralegal time is included in the 289.6 hours of attorney time reported. If paralegal time is included in that 289.6 hour figure, counsel should indicate that in any subsequent motion for approval.

12

**IV. Conclusion**

The Motion for Approval of Collective Action Settlement, ECF No. 56, is DENIED. Denial is without prejudice to any later motion for approval that addresses the deficiencies identified above. Should the parties submit a new proposed settlement requesting that notice be issued to potential plaintiffs, they should consider the Sixth Circuit's recent opinion in <u>Clark v. A&L Homecare & Training Ctr., LLC</u>, 68 F.4th 1003 (6th Cir. 2023), which held that plaintiffs must show a strong likelihood that the recipients of notice are similarly situated if notice is to be issued.

SO ORDERED this 7th day of July, 2023.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE