IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| **TIMOTHY COLEMAN,**<br><br> **Plaintiff,**<br><br>v.<br><br>**AMAZON.COM, INC.,**<br>**AMAZON LOGISTICS, INC.,**<br>**AMAZON.COM SERVICES, INC., and**<br>**JARS TD, INC.,**<br><br> **Defendants.** | **No. 2:21-cv-02200-SHM** |

---

**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND DENYING MOTION FOR STATUS CONFERENCE AS MOOT**

---

This is a Fair Labor Standards Act ("FLSA") collective action. Plaintiff Timothy Coleman, on behalf of himself and a group of similarly situated workers (the "Opt-In Plaintiffs" and, collectively, "Plaintiffs"), seeks unpaid overtime wages from Defendants Amazon.com, Inc., Amazon Logistics, Inc., Amazon.com Services, Inc. (collectively, "Amazon"), and JARS TD, INC ("JARS"). On October 7, 2022, the parties reached a tentative collective action settlement and filed a Motion for Preliminary Approval (ECF No. 56), which the Court denied on July 7, 2023. (ECF No. 70).

Before the Court are two motions. On May 30, 2024, the parties filed a Second Motion for Preliminary Approval. (ECF No. 73). On September 10, 2024, the parties filed a Motion for Status Conference, asking the Court to hold a conference to address any questions about the pending motion. (ECF No. 74). For the reasons stated below, the Second Motion for Preliminary Approval is **GRANTED**, and the Motion for Status Conference is **DENIED AS MOOT**.

I.   BACKGROUND

Plaintiff worked as a delivery driver for JARS, a contractor for Amazon that provided "last mile" delivery services for Amazon packages in Memphis, Tennessee. (ECF No. 1). Plaintiff regularly worked overtime but JARS only paid him a daily rate. On April 1, 2021, Plaintiff filed suit against Defendants, seeking unpaid overtime wages under the FLSA, 29 U.S.C. §§ 201-219. (ECF No. 1). On August 19, 2021, Plaintiff amended his complaint, converting the action into an FLSA collective action on behalf of himself and a group of similarly situated delivery drivers. (ECF No. 33). After "extensive investigation, arm's length settlement negotiations, and multiple in-person settlement conferences," the parties agreed to settle. (ECF Nos. 56).

### A.   First Proposed Settlement

On October 7, 2022, the parties filed a Motion for Preliminary Approval, asking the Court to approve the settlement and dismiss the case with prejudice. (ECF No. 56). The proposed agreement allocated $560,000 to pay all delivery drivers' claims. Id. Each driver who opted in to the FLSA collective action would receive a $50 minimum. Id. Drivers were deemed to have opted in by signing and depositing their settlement checks. Id. The parties identified 3,202 potential collective members, requiring $160,100 to fulfill the $50 minimum payouts. Id. The remaining $399,900 would be distributed pro rata among the 1,409 drivers who worked more than 35 hours a week for more than two weeks, averaging $333.82 per driver. Id.

In exchange for those payments, collective members would release their wage-and-hour claims under the FLSA and applicable state law. Plaintiff would also receive an additional $10,000 for his general release of all claims against Defendants, whether under wage-and-hour or other law. Id. The proposed agreement allocated up to $400,000 for attorney's fees and $30,000 for administrative and court costs. Id.

On July 7, 2023, the Court denied the Motion for Preliminary Approval, identifying several deficiencies: (1) depositing a settlement check would not satisfy the opt-in requirement under

3

FLSA § 216(b), which mandates opt-in by written consent; (2) the parties' request to dismiss the case immediately on settlement approval would be procedurally improper, because dismissal cannot occur before all parties have opted in; (3) there was insufficient information to evaluate Plaintiff's additional $10,000 payment for his general release of claims; and (4) there was insufficient information to assess Plaintiffs' counsel's fee request. (ECF Nos. 60, 70).

    **B.    Second Proposed Settlement**

After the Court's July 7, 2023 Order, the parties renegotiated the settlement agreement to address the Court's concerns. (ECF No. 73). On May 30, 2024, the parties submitted an Amended Settlement Agreement and filed a Second Motion for Preliminary Approval. Id.

The Amended Settlement Agreement makes the following changes in the original settlement agreement:

1. **Two-Step Approval:** To address the Court's procedural concerns, the Amended Settlement Agreement establishes a two-step approval process. First, the parties will seek preliminary approval of the settlement, after which notice will be sent to potential Opt-In Plaintiffs. Second, once all Opt-In Plaintiffs have joined the

4

collective, the parties will seek final approval of the settlement. Neither the releases applicable to Opt-In Plaintiffs nor the dismissal of the action will become effective until the Court issues a Final Approval Order. Id.

2. **Opt-In Notice**: The Amended Settlement Agreement provides that the notice sent to potential Opt-In Plaintiffs will inform them of the minimum estimated settlement payment they will receive if they opt in. The notice will explain the limited scope of their release, which will bind them if they choose to participate in the settlement. Id.

3. **Consent Forms**: The notice will include a consent form that potential Opt-In Plaintiffs can complete and submit to formally opt in. Potential Opt-In Plaintiffs will have the option to submit consent forms electronically or by mail. Those forms will be filed with the Court before the Court grants final approval of the settlement. Id.

4. **Payment After Opt-In**: Settlement checks will be distributed only after Opt-In Plaintiffs' written consent forms have been filed with the Court and after the Court has granted final approval. Id.

5

5. **Settlement Fund**: Under the Amended Settlement Agreement, Defendants will pay $1,000,000 into a common fund. Of that amount, $560,000 will be set aside for payment of the individual claims of eligible employees who opt in to the settlement. Id.

6. **Attorneys' Fees**: The total amount allocated for attorneys will not exceed $430,000, which includes up to $380,000 in attorneys' fees, up to $50,000 in court costs, and up to $40,000 in settlement administration fees. Id.

7. **Plaintiff's General Release**: Plaintiff will receive $10,000 for a general release of claims against Defendants. That payment is intended to cover liabilities arising solely out of Plaintiff's employment with JARS. Id.

8. **Uncashed Checks**: Under the original settlement agreement, any unclaimed settlement funds would have reverted to Defendants. Under the Amended Settlement Agreement, any amount remaining from uncashed checks will instead be donated to a nonprofit charitable organization that benefits Defendants' employees. The parties will identify

6

the recipient organization in their subsequent motion for final approval. Id.

9. **Supplemental Jurisdiction**: The Court will retain supplemental jurisdiction over the administration and enforcement of the FLSA settlement after the litigation is dismissed. Id.

The Amended Settlement Agreement satisfies the substantive and procedural concerns expressed in the Court's July 7, 2023 Order.

## II. STANDARD OF REVIEW

Section 216(b) of the FLSA "permits an employee to recover unpaid overtime compensation by suing an employer on behalf of himself and other employees similarly situated." O'Bryant v. ABC Phones of North Carolina, Inc., No. 2:19-cv-02378, 2020 WL 4493157, at *5 (W.D. Tenn. Aug. 4, 2020) (quoting 29 U.S.C. § 216(b)); see also Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006). Ordinarily, an employee's right to overtime compensation under the FLSA is "mandatory" and "not subject to bargaining, waiver, or modification by contract or settlement." Carr v. Bob Evans Farms, Inc., No. 1:17-cv-1875, 2018 WL 7508650, at * 2 (N.D. Ohio Jul. 27, 2018); see also Dillworth v. Case

7

Farms Processing, Inc., No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010)(citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697 (1945)).

FLSA claims may be settled relying on one of two exceptions. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982). The first exception applies when the Secretary of Labor supervises a settlement. See Robinson v. Sheppard Performance Group, No. 19-cv-12228, 2020 WL 619603, at *1 (E.D. Mich. Feb. 10, 2020) (quoting Wolinsky v. Scholastic Inc., 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012)). The second exception, applicable here, applies when the parties "present to the district court a proposed settlement," and the district court approves the settlement "after scrutinizing [it] for fairness." Lynn's, 679 F.2d at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108, 113 n.8 (1946)).

"When parties submit a proposed FLSA settlement for a court's review, the court must review the proposed settlement to ensure that it is 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" O'Bryant, 2020 WL 4493157, at *7 (quoting Lynn's, 679 F.2d at 1355); see also Does 1-2 v. Déjà Vu Servs., Inc., 925 F.3d 886 (6th Cir. 2019), aff'g 2017 WL 2629101 (E.D. Mich. Jun. 19, 2017) (affirming approval of an FLSA settlement where the district court applied the Lynn's

8

test). A court will approve a proposed FLSA settlement only if it finds that (1) "the parties are engaged in a bona fide dispute" and (2) "the settlement is a fair and reasonable compromise of the issues presented." Lakosky v. Discount Tire Co., Inc., No. 14-13362, 2015 WL 4617186, at *1 (E.D. Mich. Jul. 31, 2015).

A court "must not rubber-stamp [FLSA settlement agreements] as approved[.]" Snook v. Valley Ob-Gyn Clinic, P.C., No. 14-cv-12302, 2015 WL 144400, at *1 (E.D. Mich. Jan. 12, 2015); see also Williams v. Alimar Security, Inc., No. 13-12732, 2016 WL 6405798, at *4 (E.D. Mich. Oct. 31, 2016). "Parties to [a] settlement must proffer sufficient evidence to allow the district court to review the terms and legitimacy of the settlement." Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. Gen. Motors Corp., 497 F.3d 615, 635 (6th Cir. 2007)(citing In re Gen. Tire & Rubber Co. Sec. Litig., 726 F.2d 1075, 1084 n.6 (6th Cir. 1984)). "A court does not have the authority to delete, modify, or substitute certain provisions of a settlement agreement[.]" O'Bryant, 2020 WL 4493157, at *8. The settlement agreement "must stand or fall in its entirety." Smothers v. NorthStar Alarm Servs., LLC, No. 2:17-cv-00548-KJM, 2019 WL 280294, at *9 (E.D. Cal. Jan. 22, 2019)(quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1988)).

9

**III. ANALYSIS**

    **A.    Whether a Bona Fide Dispute Exists**

"A bona fide dispute exists when there are legitimate questions about 'the existence and extent of defendant's FLSA liability.'" O'Bryant, 2020 WL 4493157, at *7 (quoting Selk v. Pioneers Memorial Healthcare Dist., 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016)). A settlement is a resolution of a bona fide dispute "when it reflects a reasonable compromise over the issues, such as FLSA coverage or computation of back wages, that are actually in dispute, rather than a mere waiver of statutory rights brought about by an employer's overreaching." Alvarez v. BI Incorporated, No. 16-2705, 2020 WL 1694294, at *4 (E.D. Pa. Apr. 6, 2020). To satisfy this requirement, there must be legitimate doubt about whether "the plaintiffs would succeed on the merits" if the case proceeded to litigation. O'Bryant, 2020 WL 4493157, at *7.

There is a bona fide dispute. Plaintiffs allege that they were not compensated as required by the FLSA for work performed in excess of 40 hours a week and demand a jury trial. (ECF No. 1). Defendants deny most of Plaintiffs' allegations. (ECF Nos. 25, 32). The parties contest several legal and factual issues that would significantly affect the outcome of the case, including: (1) the amount of time delivery drivers actually spent

performing their work; (2) whether JARS's timekeeping methods accurately recorded all hours worked for overtime calculations; (3) whether Amazon qualified as a joint employer under the FLSA; (4) the proper method for calculating the overtime rate when delivery drivers were paid a day rate; (5) whether Defendants could avoid liquidated damages by demonstrating good faith; (6) whether a collective action could be properly maintained; and (7) whether the parties would appeal issues related to collective action certification, liability, and damages. (ECF No. 73).

Those legal and factual disputes would have required judicial resolution had the parties not reached a settlement. See Shaffer v. LCPZ Canton, Inc., No. 5:14-cv-2304, 2015 WL 236564, at *2 (N.D. Ohio Jan. 16, 2015) (finding a bona fide dispute where the parties had divergent views of the facts and a good-faith disagreement on the applicable law). The Court is satisfied that Defendants' FLSA liability was actually and reasonably in dispute.

### B. Whether the Settlement is Fair and Reasonable

In considering whether an FLSA agreement is fair and reasonable, the Court considers the following factors: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the

11

opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement." Athan v. United States Steel Corp., 523 F.Supp.3d 960, 965 (E.D. Mich. 2021) (citing Granada Investments, Inc. v. DWG Corp., 962 F.2d 1203, 1205 (6th Cir. 1992)); see also UAW, 497 F.3d at 631; Snook, 2015 WL 144400, at *1. When a settlement is fair and reasonable, courts may approve it "to promote the policy of encouraging settlement of litigation." Lynn's, 679 F.2d at 1354; see also Athan, 523 F.Supp.3d at 964-95 ("district courts in our Circuit regularly find that the FLSA … favor[s] … approving settlements").

### 1.  Absence of Fraud or Collusion in the Settlement

There is no evidence of fraud or collusion in the parties' settlement. The agreement was reached through arm's length "three-way negotiations" in a "full-day mediation session." (ECF No. 73). The presence of an independent mediator reinforces the legitimacy of the process and mitigates concerns of fraud or collusion. Id. See also Athan, 523 F.Supp.3d at 965 (finding no fraud or collusion where the parties "reached arm[']s length settlement over the course of a 12-hour mediation with an independent third-party mediator").

Both sides are represented by experienced counsel. The involvement of skilled attorneys suggests that the settlement

was fairly negotiated and the parties' interests were adequately protected. See id. (finding no fraud or collusion where "[b]oth sides' best interests were represented by experienced and prepared counsel of their choosing."). Given these circumstances, the Court finds no indication of fraud or collusion in the parties' Amended Settlement Agreement.

### 2. Complexity, Expense, and Likely Duration of the Litigation

The complexity, expense, and likely duration of the litigation weigh in favor of settlement approval. Plaintiffs' claims raise fact-intensive and nuanced legal issues that would require significant resources to litigate. If this case were to proceed to trial, "a jury would … need to determine whether Plaintiffs worked off-the-clock, the number of the off-the-clock hours the Plaintiffs worked, and whether any violation of the FLSA was willful for purposes of determining whether a two-year or three-year statute of limitations applies[.]" (ECF No. 73). The Court would need to decide whether Defendants could establish "a good faith affirmative defense to avoid the imposition of otherwise mandatory liquidated damages" under the FLSA, as well as determine the appropriate method for calculating damages. Id.

Avoiding the time and cost of prolonged litigation serves the best interest of all parties. Should this case proceed, the

13

parties would need to conduct extensive discovery, including voluminous document production, depositions, and potentially expert testimony. See Ware v. CKF Enterprises, Inc., No. 5:19-183-DCR, 2020 WL 2441415, at *14 (E.D. Ky. May 12, 2020) (finding that "the complexity, expense, and likely duration of the litigation weigh in favor of approving the proposed settlement" when "the expense and duration of this lawsuit would be significant if there is no settlement"). Given the highly contested nature of the claims, this case could extend for months, if not years, before reaching a final resolution. Settlement provides an efficient resolution that benefits all parties.

### 3. Amount of Discovery Completed

The amount of discovery completed weighs in favor of settlement approval. The parties have engaged in substantial pre-settlement discovery. Defendants produced payroll and timekeeping data, on which Plaintiffs relied to define the scope of the FLSA collective action and assess the value of their claims. Defendants also provided key documents, including "JARS' policy documents," "timecard data," "delivery data," and "delivery packages purchased by customers on Amazon," all of which "Plaintiffs' counsel reviewed and analyzed extensively." (ECF No. 73).

Given the discovery conducted, the Court finds it appropriate to "defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement at this stage of the proceeding." Kritzer v. Safelite Solutions, LLC, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) (quoting Kogan v. AIMCO Fox Chase, L.P., 193 F.R.D. 496, 502 (E.D. Mich. 2000)) (internal quotations omitted). The extensive discovery completed by the parties supports a well-informed settlement.

### 4. Likelihood of Success on the Merits

The "likelihood of success on the merits" is the most important factor. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C., 636 F.3d 235, 245 (6th Cir. 2011). "This is not simply an estimation of the plaintiff's changes of success on the merits, but rather the balancing of likelihood of success 'against the amount and form of the relief offered in the settlement.'" Ware, 2020 WL 2441415, at *11 (citing UAW, 497 F.3d at 631). "When extinguishing the claims of a large class of people – some of whom may not even be aware that a pending lawsuit affects their rights – courts are required to closely analyze whether the claims that the unnamed class members are giving up are worth the benefits they may receive." Does 1-2, 925 F.3d at 895. "The lower the likelihood of success on the

15

merits, the more desirable a favorable settlement appears." Kritzer, 2012 WL 1945144, at *6 (citing Gen. Tire & Rubber Co., 726 F.2d at 1086).

Here, the likelihood of Plaintiffs' success on the merits is far from certain. If the case were to proceed, Plaintiffs would need to undertake additional discovery to determine the specific hours, times, and dates worked by the collective members. Even then, there would be no guarantee that the legal issues would be resolved in Plaintiffs' favor. Defendants have raised affirmative defenses that, if successful, could completely or partially preclude Plaintiffs from recovery. (ECF No. 73). Plaintiffs' entitlement to recovery depends on whether a three-year statute of limitations under the FLSA applies, which would require proving that Defendants acted "in bad faith" or "willfully" violated the FLSA. (ECF No. 73).

Given the complexity of those issues, the Court cannot determine with certainty the likelihood of success for any individual or collective FLSA claims. The parties' proposed settlement offers a fair and reasonable recovery for Plaintiffs. The most important factor weighs in favor of settlement approval.

### 5. Opinions of Class Counsel and Representatives

"When considering a proposed settlement, the court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" Level v. Monsanto Research Corp., 191 F.R.D. 543 557 (S.D. Ohio 2000) (quoting Williams v. Vukovich, 720 F.2d 909, 922-23 (6th Cir. 1983)). "[T]he opinions of counsel should be given considerable weight if counsel is familiar with the litigation and has previous experience with similar cases." Lopez v. Silfex, Inc., No. 3:21-cv-61, 2021 WL 5795280, at *7 (S.D. Ohio Dec. 3, 2021) (internal quotations omitted).

Counsels for all parties have extensive experience in FLSA collective action litigation and have carefully evaluated the strength and risks of continued litigation. (ECF No. 73). The parties' counsels unanimously agree that "settlement is in the best interest of all parties involved, including the Opt-In Plaintiffs." Id. The collective action representatives support the settlement and believe it "serves the best interest of the parties." Id. Given the experience and informed judgment of counsels and class representatives, this factor weighs in favor of settlement approval.

### 6. Reaction of Absent Class Members

Because this is an opt-in FLSA collective action, there are no absent class members whose interests need to be considered. Under the FLSA, no individual can be bound by a settlement unless that individual affirmatively opts in to the collective action. See 29 U.S.C. § 216(b). Because all Opt-In Plaintiffs have an opportunity to make an informed decision, this factor weighs in favor of settlement approval.

### 7. Public Interest in the Settlement

"Public policy generally favors settlement of class action lawsuits." Hainey v. Parrott, 617 F.Supp.2d 668, 679 (S.D. Ohio 2007) (citing Whitford v. First Nationwide Bank, 147 F.R.D. 135, 143 (W.D. Ky. 1992)). Although this is not a class action, the same policy applies to FLSA collective actions. See Kritzer, 2012 WL 1945144, at *8 (applying the general policy of favoring settlements in the FLSA collective action context); see also Pavlov v. Continental Casualty Co., No. 3:07-cv-2580, 2009 WL 10689011, at *10 (N.D. Ohio Oct. 7, 2009)("There is a strong public presumption in favor of settlement"); Stotts v. Memphis Fire Dept., 679 F.2d 541, 555 n.11 (6th Cir. 1982). "Compromises of disputed claims are favored by the courts'[.]" Williams v. First National Bank, 216 U.S. 582, 595 (1910); see also In re Cardizem CD Antitrust Litigation, 218 F.R.D 508, 530 (E.D. Mich.

18

2003) ("there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources") (internal quotations omitted).

The public interest factor weighs in favor of settlement approval. The proposed settlement resolves a complex dispute, eliminates uncertainty for all parties, and saves the substantial time and expense of prolonged litigation. See Dillworth v. Case Farms Processing, Inc., No. 5:08-cv-1694, 2010 WL 776933, at *6 (N.D. Ohio Mar. 8, 2010) (finding that the public interest favored settlement because it provided "certainty and finality" in a complex case where "there is no guarantee that Plaintiffs would prevail at trial"); see also Does 1-2, 925 F.3d at 899 (finding that the public interest favored "putt[ing] an end to potentially long and protracted litigation"). The settlement serves both the best interests of the parties and the broader goals of judicial economy.

**IV. CONCLUSION**

For the foregoing reasons, the Court approves the parties' Amended Settlement Agreement. The Second Motion for Preliminary Approval of Settlement is **GRANTED.**

Because the parties' Motion for Status Conference asks the Court to address the matter resolved in this Order, the Motion for Status Conference is **DENIED AS MOOT**.

**SO ORDERED** this *21st* day of February, 2025.

 /s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE