## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-02200-SHM-atc |
| | ) | |
| AMAZON.COM, INC.; AMAZON | ) | |
| LOGISTICS, INC.; AMAZON.COM | ) | |
| SERVICES, INC.; JARS TD, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### ORDER GRANTING FINAL APPROVAL OF AMENDED SETTLEMENT AGREEMENT AND AWARDING ATTORNEYS' FEES.

Before the Court are two motions. The first is a Joint Motion for Final Approval of Amended Collective Action Settlement Agreement (ECF No. 99), filed on September 29, 2025. That Motion is brought by Plaintiff Timothy Coleman and Defendants Amazon.com, Inc., Amazon Logistics, Inc., Amazon.com Services, Inc., (collectively "Amazon") and JARS TD, Inc. ("JARS," together with Amazon, "Defendants"). The second Motion is Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Costs and General Release Payment to Plaintiff, filed on September 30, 2025. (ECF No. 101.) For the following reasons, both motions are GRANTED.

### I.    Background

Plaintiff worked as a delivery driver for JARS, a contractor for Amazon that provided "last mile" delivery services for Amazon packages in Memphis, Tennessee. (ECF No. 1.) Plaintiff alleges that he regularly worked overtime, but JARS only paid him a daily rate. On April 1, 2021, Plaintiff filed this lawsuit against Defendants on his own behalf. (Id.) On August 19, 2021, Plaintiff filed his First Amended Collective Action Complaint, on behalf of himself and those similarly situated, seeking unpaid overtime wages under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219. (ECF No. 33.) The Amended Collective Action Complaint identifies all delivery drivers or driver associates who worked for Defendants to provide last mile delivery services at any location within the three-year period preceding the filing of the original Complaint. (Id.)

On October 29, 2021, the Parties filed a motion to stay the proceedings pending mediation, which the Court granted. (ECF No. 54.) For several months, the Parties engaged in an extensive alternative dispute resolution process. (ECF No. 99.)

Eventually, the Parties came to an agreement to settle the collective's claims and filed a proposal with the Court on October 7, 2022. (ECF No. 56.) The Court rejected that initial agreement, citing multiple deficiencies. (ECF No. 70.) The Parties negotiated for another year, agreeing to an Amended

Settlement Agreement preliminarily approved by the Court on February 21, 2025. (ECF No. 75.)

The Amended Settlement Agreement required Defendants to pay $1,000,000 into a settlement fund. (ECF No. 73.) $560,000 of that amount would be set aside for claimants. (Id.) The rest of the money would be allocated to a Plaintiff general release payment and attorneys' fees and costs. (Id.) To determine the amount awarded to each claimant, the agreement set forth a formula that provided a pro rata share of the settlement fund to claimants based on the number of weeks the claimants worked overtime, in addition to a $25.00 minimum payment. (Id.) By opting in, collective members would release the federal and state law wage claims that accrued during the relevant time period. (Id.)

After the Court's February 21, 2025 Order preliminarily approving the Amended Settlement Agreement, the Parties implemented the agreement. On March 27, 2025, the Court-approved Settlement Administrator, Analytics LLC, notified the 3,202 potential settlement collective members via mail and email using information provided by Defendant JARS. (ECF No. 99.) The Settlement Administrator also established a telephone number, email address, and website to further inform potential settlement collective members about the Amended Settlement Agreement. (Id.)

3

A total of 3,179 of the 3,202 potential settlement collective members received notice of their ability to opt-in to the settlement (99.28%). (Id.) The Settlement Administrator received one objection to the pro rata share calculated from a potential settlement collective member who observed that the member's amount owed had been miscalculated. (Id.) The Settlement Administrator adjusted the potential settlement collective member's payout accordingly, and the objection was resolved. (Id.) Seven additional individuals contacted the Settlement Administrator of their own accord, requesting to be included among the settlement collective. (Id.) The Parties approved their requests. (Id.) The Settlement Administrator received 1,235 valid consent forms. (Id.) That is a 38.6% opt-in rate.[1]  (Id.)

After the opt-in window closed on June 25, 2025, based on the 38.6% opt-in rate, the amount allocated to each settlement collective member increased to 150% of each member's original estimated individual payment, in accordance with the preliminarily approved Amended Settlement Agreement. (Id.) This means that $443,305.67 of the $560,000 (79.16%) of the net settlement amount allocated to settlement collective members

---

[1] It is unclear whether the seven self-identifying collective members are included in the denominator of the opt-in rate calculation.  The Settlement Administrator, Caroline Barazesh, identified a 38.6% opt-in rate in her sworn statement attached as Exhibit 1 in the Joint Motion for Final Approval of the Amended Collective Action Settlement Agreement. (ECF No. 99 and 105.)

will be paid to settlement collective members. (Id.) The
Settlement Administrator will donate the remaining 20.84% of the
fund to the Legal Services Corporation, a 501(c)(3) organization
that fits the agreed-upon definition of a charitable organization
in the preliminarily approved Amended Settlement Agreement.[2]
(Id.)

## II. Jurisdiction

Plaintiffs allege violations of the FLSA in their Amended
Complaint. (ECF No. 33.) The Court has subject matter
jurisdiction over FLSA claims under the general grant of federal
question jurisdiction. 28 U.S.C. § 1331.

## III. Settlement Approval

### A. Legal Standard

Section 216(b) of the FLSA "permits an employee to recover
unpaid overtime compensation by suing an employer in behalf of
himself and other employees similarly situated." O'Bryant v. ABC
Phones of North Carolina, Inc., No. 2:19-cv-02378, 2020 WL
4493157, at *5 (W.D. Tenn. Aug. 4, 2020) (quoting 29 U.S.C. §
216(b), internal quotation marks omitted); see also Comer v.
Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006).

---

[2] This amount may increase if settlement collective members who
opted-in do not cash their settlement checks.

Ordinarily, an employee's right to overtime compensation under the FLSA is "mandatory" and "not subject to bargaining, waiver, or modification by contract or settlement." Carr v. Bob Evans Farms, Inc., No. 1:17-cv-1875, 2018 WL 7508650, at * 2 (N.D. Ohio Jul. 27, 2018); see also Dillworth v. Case 8 Farms Processing, Inc., No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010) (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697 (1945)).

FLSA claims may be settled in two ways. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982). First, the Secretary of Labor can supervise a settlement. See Robinson v. Sheppard Performance Group, No. 19-cv-12228, 2020 WL 619603, at *1 (E.D. Mich. Feb. 10, 2020) (quoting Wolinsky v. Scholastic Inc., 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012)). Second, applicable here, the Parties can "present to the district court a proposed settlement," and the district court can approve the settlement "after scrutinizing [it] for fairness." Lynn's, 679 F.2d at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108, 113 n.8 (1946)).

A court will grant a motion for settlement approval only after finding that it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." O'Bryant, 2020 WL 4493157, at *7 (quoting Lynn's, 679 F.2d at 1355); see also Does

1-2 v. Déjà Vu Servs., Inc., 925 F.3d 886 (6th Cir. 2019), aff'g
2017 WL 2629101 (E.D. Mich. Jun. 19, 2017) (affirming approval
of an FLSA settlement where the district court applied the Lynn's
test).  A court will approve a proposed FLSA settlement only if
it finds that (1) "the parties [are] engaged in a *bona fide*
dispute" and (2) "the settlement is a fair and reasonable
compromise of the issues presented." Lakosky v. Discount Tire
Co., Inc., No. 14-13362, 2015 WL 4617186, at *1 (E.D. Mich. Jul.
31, 2015).

### B. Settlement Final Approval

"A *bona fide* dispute exists when there are legitimate
questions about the existence and extent of defendant's FLSA
liability." O'Bryant, 2020 WL 4493157, at *7 (internal quotations
omitted).

Here, as analyzed in the Order preliminarily approving the
settlement (ECF No. 75), there is a *bona fide* dispute among the
Parties.  The similarly situated Plaintiffs allege that they
were not compensated as required by the FLSA for work performed
in excess of 40 hours a week and demand a jury trial. (ECF No.
33.) Defendants deny most of Plaintiffs' allegations, including
the amount of time delivery drivers spent performing their work,
whether JARS's timekeeping methods accurately recorded all hours
worked for overtime calculations, and whether Amazon qualifies

7

as a joint employer under the FLSA. (See ECF No. 73.) Those legal and factual disputes would have required judicial resolution absent a settlement.

To determine whether an FLSA agreement is fair and reasonable, the Court considers "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement." Athan v. United States Steel Corp., 523 F. Supp. 3d 960, 965 (E.D. Mich. 2021) (citing Granada Investments, Inc. v. DWG Corp., 962 F.2d 1203, 1205 (6th Cir. 1992); see also Snook v. Valley Ob-Gyn Clinic, P.C., No. 14-CV-12302, 2015 WL 144400, at *1 (E.D. Mich. Jan. 12, 2015).

The Court found in its July 2, 2025 Order preliminarily approving the Amended Settlement Agreement that the agreement was fair and reasonable. (ECF No. 75.) On review for final approval, the Court finds no reason to depart from that conclusion. There is no evidence of fraud or collusion since the July 2, 2025 Order. Nothing has changed to alter the Court's conclusion that the complexity, expense, and duration of the litigation favors approving the Amended Settlement Agreement.

The amount of discovery completed and the Plaintiffs' likelihood of success on the merits have not changed. The Court is satisfied with Plaintiffs' Counsel's assertion that the Amended Settlement Agreement is fair and reasonable. Named representative Timothy Coleman's continued participation in the case is also a testament to the Amended Settlement Agreement's fairness and reasonableness, as well as his explicit support of the agreement before its implementation. (ECF No. 73.)

Because the agreement is an opt-in FLSA collective action, the reaction of absent class members need not be considered. Athan, 523 F. Supp. 3d at 968. Only one potential collective settlement member objected to the promised payout, and the Settlement Administrator was able to resolve the dispute. (ECF No. 99.) The 38.6% opt-in rate is within the typical range of opt-in rates for FLSA settlement agreements. See Davis v. Omnicare, Inc., No. 5:18-CV-142-REW, 2021 WL 4188053, at *2 (E.D. Ky. Sept. 14, 2021) (approving motion for final approval of FLSA settlement agreement where 44% of all known class members had opted in); and O'Bryant v. ABC Phones of N. Carolina, Inc., No. 19-CV-02378-SHM-TMP, 2021 WL 5016872, at *2 (W.D. Tenn. Oct. 28, 2021) (approving motion for final approval of FLSA settlement agreement where 17% of all known class members opted in).

The Amended Settlement Agreement is in the public interest. The agreement balances the need to ensure employers comply with federal labor law with the possibility Plaintiffs' claims lack merit. Settlement also provides certainty and relief for the affected Parties and promotes judicial economy.

The Court approves the proposed cy pres recipient, the Legal Services Corporation. (ECF No. 99.)

The Settlement Collective is AWARDED $560,000.00.

## IV.  Attorneys' Fees

### A. Legal Standard

Attorneys' fees and costs are mandatory under the FLSA. 29 U.S.C. § 216(b). The award must be reasonable. "A reasonable fee is 'adequately compensatory to attract competent counsel' but 'avoids producing a windfall for lawyers.'" Rembert v. A Plus Home Health Care Agency LLC, 986 F.3d 613, 616 (6th Cir. 2021) (citing Geier v Sundquist, 372 F.3d 784, 791 (6th Cir. 2004). "[A] court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513, 516 (6th Cir. 1993); see also Davis, 2021 WL 4188053, at *6 (applying Rawlings to a hybrid FLSA collective action).

The Court has discretion to choose one of two methods to calculate reasonable attorneys' fees in a common fund case: a percentage-of-the-fund calculation or a lodestar multiplier of billable hours.  <u>Carr</u>, 2018 WL 7508650, at *3 (citing <u>Rawlings</u>, 9 F.3d at 516-17).  The Court "must provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee." <u>Rawlings</u>, 9 F.3d at 516 (6th Cir. 1993).

**B. Approval**

Plaintiffs' Counsel requests $380,000.00 in attorneys' fees from the common fund, plus out-of-pocket costs (analyzed below). (ECF No. 101.) Plaintiffs' Counsel arrives at its request by applying a percentage-of-the-fund amount of 38%. (<u>Id</u>.) Plaintiffs' Counsel argues that the amount requested as a percentage-of-the-fund is fair and reasonable in its own right and based on a "lodestar cross-check," which compares the percentage-of-the-fund amount to an amount calculated using an hours-worked and lodestar multiplier formula. (<u>Id</u>.)

Plaintiffs' Counsel is correct that in the Sixth Circuit, the Court may base its fee award on a percentage-of-the-fund calculation and cross-check the result using the lodestar method. <u>See</u> <u>Bowling v. Pfizer, Inc.</u>, 102 F.3d 777, 780 (6th Cir. 1996); <u>see also</u> <u>Fitzgerald v. P.L. Mktg., Inc.</u>, No. 217-cv-02251, 2020

11

WL 3621250, at *10 (W.D. Tenn. July 2, 2020).  The percentage-of-the-fund method has been "the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share." Fitzgerald, 2020 WL 3621250 at *10 (citing Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010)).  In Rawlings, the Sixth Circuit observed that the percentage-of-the-fund method has many advantages: it is easy to calculate, it provides attorneys with realistic expectations about their expected recovery, and it encourages settlement. Rawlings, 9 F.3d at 516.  The method also aligns the interests of the class in enlarging its settlement award and the attorneys negotiating the amount of that award.  The "lodestar method…remains *disfavored* because regardless [of] how a total settlement structure is formally structured…every dollar given to class counsel means one less dollar for the class." Salinas v. U.S. Xpress Enters., Inc., No. 113CV00245TRMSKL, 2018 WL 1477127, at *9 (E.D. Tenn. Mar. 8, 2018), report and recommendation adopted, No. 1:13-CV-245, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018) (internal citations omitted).  The lodestar method has been criticized for consuming scarce judicial resources, because it requires reviewing time sheets and scrutinizing details of services alleged to have been provided. See Rawlings, 8 F.3d at 516-17 (citing Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1268-69 (D.C. Cir. 1993)).

Although the lodestar method on its own might better prevent a windfall to attorneys and provide better accountability for hours earned, Rawlings, F.3d at 516, those issues are unlikely occur in this case.  To provide the fullest accountability reasonably available, the analysis begins with the percentage-of-the-fund method, cross-checked by a lodestar calculation.

The "normal fee amount in a wage and hour case" is 1/3 of the settlement fund.  Satterly v. Airstream, Inc., No. 3:19-CV-107, 2020 WL 6536342, at *10 (S.D. Ohio Sept. 25, 2020) (citing numerous cases in which 1/3 of a fund is awarded in attorneys' fees).  That norm is not exact, and attorneys' fee awards "typically range from 20 to 50 percent of the common fund." Arledge v. Domino's Pizza, Inc., No. 3:16-CV-386-WHR, 2018 WL 5023950, at *4 (S.D. Ohio Oct. 17, 2018) (citing In re Broadwing, Inc. ERISA Litig., 252 F.R.D. 369, 380-81 (S.D. Ohio 2006)).

Plaintiffs' Counsel seeks an award of attorneys' fees equal to 38% of the common fund. (ECF No. 101.) Awarding attorneys' fees of 38% is well within the acceptable range and consistent with precedent in this Circuit.  See Salinas, 2018 WL 1477127 at *9 (awarding 40% of a common fund in attorneys' fees in an FLSA collective action settlement); see also Brittmon v. Upreach LLC, No. 2:17-CV-219, 2018 WL 7889855, at *2 (S.D. Ohio Nov. 8, 2018)

13

(same).    The  proposed  38%  fee  is  a  fair  and  reasonable

application  of  the  percentage-of-the-fund  method.

    To conduct a lodestar cross-check, the Court multiplies the

number  of  hours  "reasonably  expended"  on  the  litigation  by  a

reasonable hourly rate.  <u>Bldg. Serv. Loc. 47 Cleaning Contractors</u>

<u>Pension Plan v. Grandview Raceway</u>, 46 F.3d 1392, 1401 (6th Cir.

1995).    When  conducting  the  cross-check,  "[i]n  contrast  to

employing  the  lodestar  method  in  full…the  hours  documented  by

counsel  need  not  be  exhaustively  scrutinized  by  the  district

court."   <u>Gokare v. Fed. Express Corp.</u>, No. 2:11-CV-2131-JTF-CGC,

2013  WL  12094887,  at  *7  (W.D.  Tenn.  Nov.  22,  2013)  (citing

<u>Johnson v. Midwest Logistics Sys., Ltd.</u>, No. 2:11-CV-1061, 2013

WL 2295880, at *6 (S.D. Ohio May 24, 2013)).   Instead, the court

may rely on a declaration submitted by counsel.  <u>Id</u>.  In <u>Johnson</u>,

the  court  approved  attorneys'  fees  for  class  counsel  based  on  a

declaration  stating  the  total  number  of  hours  spent  and  an

average  rate  of  the  attorneys  and  paralegals  who  worked  on  the

case.   2013 WL 2295880, at *6.   If the hours worked and hourly

rate are reasonable, the court determines the reasonableness of

the "lodestar multiplier," meant to account for the risk lawyers

accept  when  they  take  a  case  on  contingency.   <u>Rawlings</u>, 9 F.3d

at 516.  "In wage and hour collective and class actions, lodestar

multipliers  between  1  and  3  are  common."   <u>Fitzgerald</u>,  2020  WL

3621250, at *10 (listing cases showing lodestar multipliers
between 1 and 3).

Plaintiffs' Counsel submits an affidavit stating that
Plaintiffs' attorneys and paralegal spent approximately 340
hours at a blended rate of $575.00 an hour. (ECF No. 101.) The
blended rate is based on a rate of $600.00 for attorney Andrew
Frisch, $550.00 for attorney Paul Botros, and $175 for paralegal
Vanessa Fish. (Id.) Attorneys Frisch and Botros' fees are
eminently reasonable given their more than 20 years at the bar
and extensive experience practicing employment law. Id; See,
e.g. Monroe v. FTS USA, LLC, No. 2:08-CV-02100-JTF-CG, 2014 WL
4472720, at *12 (W.D. Tenn. July 28, 2014) (approving attorneys'
fees request at comparable hourly rates in an FLSA case with
similarly experienced lawyers and paralegals)). The same is
true of paralegal Fish. (Id.)

The 340 hours of claimed work is reasonable. Plaintiffs'
Counsel filed the first Complaint in April 2021. (ECF No. 1.)
Subsequent litigation led to an FLSA collective action claim.
(ECF No. 33.) The Parties engaged in substantial pre-settlement
discovery, exchanging and analyzing payroll and timekeeping
data. (ECF No. 75.) The Parties negotiated two settlement
agreements, the second preliminarily approved. (Id.) Although
Counsel have not submitted detailed timesheets documenting their

15

work, doing so is unnecessary.  Counsel's affidavit is sufficient
and consistent with the practice in other FLSA cases in this
District.  See Johnson, 2013 WL 2295880, at *6.  When analyzing
attorneys' fees in general, "courts ... should not[ ] become
green-eyeshade accountants."  Freed v. Thomas, 137 F.4th 552,
562 (6th Cir. 2025) (citing Fox v. Vice, 563 U.S. 826, 838
(2011)). Counsel's hours and rates are reasonable.

Plaintiffs' Counsel asks the Court to apply a 1.969 lodestar
multiplier. (ECF No. 101.) That number is well within the range
of typical lodestar multipliers described above and adequately
represents the risk Counsel assumed when litigating the case.
The lodestar cross-check is summarized as 340 hours at a blended
rate of $575 multiplied by a 1.949 multiplier, yielding
approximately $381,000.00. The lodestar cross-check supports the
reasonableness of Counsel's requested $380,000 fee.

In assessing the reasonableness of fee awards, the Sixth
Circuit often cites the "Ramey factors":

> (1) the value of the benefit rendered to the plaintiff
> class; (2) the value of the services on an hourly
> basis; (3) whether the services were undertaken on a
> contingent fee basis; (4) society's stake in rewarding
> attorneys who produce such benefits in order to
> maintain an incentive to others; (5) the complexity of
> the litigation; and (6) the professional skill and
> standing of counsel involved on both sides.

16

Moulton v. U.S. Steel Corp., 581 F.3d 344, 352 (6th Cir. 2009) (internal citations omitted).

The Ramey factors support fee approval. Each opt-in collective action member will receive 50-100% of the member's unpaid wage estimate as alleged by Plaintiffs. (ECF No. 101.) That is well above the 7-11% average result in unpaid wage cases. See Dillworth, 2010 WL 776933, at *8; see also Carr, 2018 WL 7508650, at *4, describing a 25-50% recovery in an FLSA action about tips as "well above average"). The reasonableness of the value of the services provided is analyzed approvingly above in conducting the lodestar cross-check. The services were undertaken on a contingency fee basis. (ECF No. 101.) Society benefits from encouraging lawyers to take on time-consuming collective actions. The case was legally and factually complex, and Counsel for all Parties were highly skilled. (Id.)

Due to the number and nature of the individuals who opted in, some money will be unclaimed and be paid to the cy pres recipient, the Legal Services Corporation. (Id.) Even if the Court awarded less money in fees, the money remaining would not benefit the members of the class directly. Each class member will already receive 150% of the member's initial claim calculation, as provided in the Amended Settlement Agreement. (Id.)

17

Plaintiffs' Counsel is AWARDED $380,000.00 in attorneys' fees.

## V.  Costs

Costs are mandatory under the FLSA.  29 U.S.C. § 216(b). "The prevailing party in an FLSA case is entitled to all reasonable costs of litigation." Monroe v. FTS USA, LLC, No. 208CV02100JTFCGC, 2020 WL 13227389, at *9 (W.D. Tenn. Oct. 13, 2020), aff'd, 17 F.4th 664 (6th Cir. 2021).  Here, Plaintiffs' Counsel requests $5,833.56 for printing and copying, telephone calls, legal research, mediation, and travel. (ECF No. 101.) Each of the categories and the total amount are reasonable.  See Monroe, 2020 WL 13227389 at *10 (awarding costs for copying, research, and travel); see also Macklin v. Delta Metals Co., Inc., No. 2:08-CV-02667, 2011 WL 13070420, at *6 (W.D. Tenn. July 6, 2011) (awarding fees for telephone calls).  Plaintiffs' Counsel requests $34,799.00 as reimbursement for the cost of the third-party Settlement Administrator. (ECF No. 101.)  That amount, too, is reasonable. See Fitzgerald, 2020 WL 3621250 at *11 (awarding $29,750 in settlement administration costs).

Plaintiffs' Counsel is AWARDED $40,632.56 in costs.

## VI.  Plaintiffs' General Release Payment

In the first, rejected settlement agreement, the Parties agreed to give named Plaintiff Coleman a $10,000 service award. (ECF No. 56.) That award was rejected by Court because the Court had inadequate information about Coleman's service to the class and his role in the litigation. (ECF No. 70.) The Parties now represent that the $10,000 payment to Coleman is not a service award, but that the "general release is unrelated to Mr. Coleman's role as the 'named' plaintiff in this litigation." (ECF NO. 101.) The Parties contend that the payment to Coleman settles claims "separate and apart from" his FLSA claims. (Id.) The Court accepted this characterization of the $10,000 payment to Coleman in its preliminary approval. (ECF No. 75.) "[O]rdinary settlements do not require court approval." In re Dry Max Pampers Litig., 724 F.3d 713, 715 (6th Cir. 2013). The Court was satisfied in its preliminary approval that the payment to Coleman would compensate him for claims other than those made in the instant litigation and finds no reason to alter that conclusion now.

## VII. Conclusion

For the foregoing reasons, the Joint Motion for Final Approval of Amended Collective Action Settlement Agreement is **GRANTED**, and the Parties' Amended Settlement is **APPROVED**. The

Motion for Approval of Attorneys' Fees and Costs and General Release Payment to Plaintiff is **GRANTED.**

The Court **FINDS** that:

1. Notices have been distributed to Potential Opt-In Plaintiffs in the manner approved in the Court's February 2, 2025 Preliminary Approval Order. The Notices distributed: (1) constitute the best practicable notice under the circumstances; (2) constitute notice that was reasonably calculated, under the circumstances, to apprise Potential Opt-In Plaintiffs of the pendency of this litigation, the terms of the Amended Settlement, their right to object to the Amended Settlement, and their right to exclude themselves from the FLSA Collective, (3) constitute due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (4) meet the requirements of due process.

2. No member of the FLSA Collective notified the Court of an objection to the Amended Settlement.

The Court **ORDERS** that:

1. The following FLSA Collective is **CERTIFIED** for final settlement purposes only: Plaintiff and all current and former Delivery Associates who were paid by JARS to deliver

20

packages to customers of Amazon in the U.S. between October 29, 2018, and April 30, 2022.

2. Each member of the FLSA Collective is bound by this Order, including, without limitation, the release of claims as set forth in the Amended Settlement Agreement.

3. JARS and the Amazon Defendants are bound by this Order, including, without limitation, the release of claims as set forth in the Amended Settlement.

4. The Parties are directed to implement and consummate the Amended Settlement according to the terms and provisions of the Amended Settlement.

5. Defendants are directed to pay into the Qualified Settlement Fund the sum of $560,000.00.

6. The Settlement Administrator is directed to prepare, issue, and distribute settlement checks and necessary tax forms to each member of the FLSA Collective as provided by the Amended Settlement.

7. Plaintiffs' Counsel is awarded attorneys' fees and costs in the amount of $420,632.56, not to be paid from the Qualified Settlement Fund.

8. Named Plaintiff's claims and the claims of the FLSA Collective against Defendants are DISMISSED WITH PREJUDICE.

9. The Court retains continuing and exclusive jurisdiction over all matters relating to the administration,

consummation, enforcement, and interpretation of the
Amended Settlement and this Order.


**SO ORDERED** this 31st day of October, 2025.


                              /s/ Samuel H. Mays, Jr.
                              SAMUEL H. MAYS, JR.
                              UNITED STATES DISTRICT JUDGE